# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: MILFORD CONNECTICUT ASSOCIATES, L.P., <br>      Debtor. | |
| MILFORD CONNECTICUT ASSOCIATES, L.P.; SUCCESS-TREUHAND GMBH; and PETILLO ENTERPRISES, <br>      Appellants, <br><br>      v. <br><br> DIANA ADAMS, United States Trustee; PARADIGM CF CORPORATION; and RICHARD BELFORD, Chapter 7 Trustee, <br>      Appellees. | CIVIL ACTION NO. <br> 3:08cv1183 (SRU) <br><br><br> Bankruptcy Case No. <br> 3:04bk30511(ASD) |

## MEMORANDUM OF DECISION

Appellants Milford Connecticut Associates, L.P. (the "Debtor" or "MCA"), Petillo

Enterprises, Inc. ("Petillo"), and Success-Treuhand, GMBH ("Success") (collectively, the

"appellants") appeal from the United States Bankruptcy Court's decision to convert this case

from a Chapter 11 proceeding to a Chapter 7 proceeding.  The appellants contend that

Bankruptcy Judge Albert S. Dabrowski erred by concluding that there was "cause," pursuant to

11 U.S.C. § 1112, for the conversion.  The appellants want the Bankruptcy Court's order vacated

and an order directing the Bankruptcy Court to enter confirmation of the Debtor's Plan of

Reorganization.  The United States Trustee, Paradigm CF Corporation (f/k/a Mercury Capital

Corporation) ("Paradigm"), and the Chapter 7 Trustee, Richard Belford (collectively, the

"appellees"), support the Bankruptcy Court's order.  The appellees contend that Judge Dabrowski

correctly concluded that the Debtor had failed to live up to its fiduciary obligations as a debtor-

in-possession, that its plan for reorganization was no longer feasible, and that the matter was

rightly converted to a Chapter 7 case to expedite the liquidation of the Debtor's property to

satisfy the growing demands of the Debtor's mortgage and tax obligations.

　　　For the reasons that follow, the decision of the Bankruptcy Court is affirmed.

## I.　　Background

　　　The Debtor is a New Jersey limited partnership.  Its partners are Success and United

States Land Resources ("USLR") (collectively, the "Equity Holders"); each partner holds a 50%

equity stake in the Debtor.  In 1986, the Debtor acquired a piece of real property in Milford,

Connecticut, located at 265 Old Gate Lane (the "Property").  The Property is approximately 15

acres of industrial-zoned land with several useless buildings.  The Property remains vacant and

has generated no income in approximately ten years.  The Property has gained value since a

Lowe's Home Improvement store was built on the adjacent property, however, no appraisal of

the Property has been completed during the pendency of this appeal.

　　　In 1999, MCA filed for Chapter 11 bankruptcy (the "first bankruptcy") to resolve a tax

lien recorded on the Property.  As part of its plan for reorganization in the first bankruptcy, MCA

took out a $3 million mortgage on the Property from Paradigm.  Pursuant to the terms of its plan

for reorganization, MCA paid off the tax lien and other creditors.  In addition, USLR agreed to

contribute funds for the Property's rehabilitation.  The first bankruptcy was closed on July 1,

2003.

　　　Later that year, after the Debtor defaulted on its mortgage, Paradigm initiated a

foreclosure action in Connecticut state court.  The state court entered a judgment of foreclosure

against the Debtor, determining that the Debtor owed Paradigm over $4 million plus $10,000 in

attorneys' fees.  The Debtor subsequently filed for Chapter 11 bankruptcy on February 6, 2004 (the "second bankruptcy") to stay the foreclosure of the Property, the Debtor's sole asset.

Following a hearing on the parties' competing plans for reorganization, the Bankruptcy Court issued an order confirming the Debtor's plan of reorganization in November 2005.  The central feature of the Debtor's plan was a 30-month window during which the Debtor would be permitted to sell, refinance, or develop the Property before being required to pay off its creditors.  At the end of the 30-month period, Paradigm would be paid in full.

Paradigm timely appealed the confirmation order to the United States District Court for the District of Connecticut.  While that appeal was pending, Judge Dabrowski entered a stipulated order staying the confirmation order during the pendency of the appeal.  U.S. Trustee Ex. 9.  Although the confirmation order was stayed, Judge Dabrowski's order authorized the Debtor to continue its efforts to market, negotiate, sell, lease and/or option the Property during the pendency of Paradigm's appeal.  Paradigm was not permitted to solicit offers on the Property nor to negotiate with potential buyers and was ordered to direct any such communications to the Debtor.

In *Mercury Capital Corp. v. Milford Connecticut Associates, L.P.*, 354 B.R. 1, 14 (D. Conn. 2006), I vacated the confirmation order and remanded with directions to the Bankruptcy Court to answer four specific questions:

> (1) does the debtor's plan, by extinguishing Mercury's pre-petition guarantees, comply with the best interests of the creditors test as set forth in 11 U.S.C. § 1129(a)(7); (2) should the debtor's plan include a provision that requires USLR, the debtor's general partner, to fund the plan; (3) is the debtor's plan's different treatment of Mercury's and Milford's claims justified because of the different nature of the relative claims; and (4) is the interest rate payable to Mercury fair and equitable as defined by 11 U.S.C. § 1129(b)(1).

I additionally concluded that: (1) the Bankruptcy Court did not abuse its discretion when it found that the Debtor had proposed its confirmation plan in good faith, *id.* at 8; (2) the record permitted the Bankruptcy Court to find both that the Debtor's plan was confirmable and that it better protected the interests of all creditors, although I concluded that remand was necessary to determine the issue regarding Paradigm's pre-petition guarantees, *id.* at 9; (3) the Bankruptcy Court did not err in finding that the Debtor's plan for reorganization was "feasible," but that it should consider whether to make USLR expressly responsible for the Debtor's financial obligations on remand, *id.* at 9-10; (4) further fact-finding was necessary to determine whether the plan's discrimination between the claims, i.e., by granting the City of Milford a higher interest rate than Paradigm, was reasonable, *id.* at 10; (5) there was insufficient evidence in the record to determine whether Paradigm's interest rate was properly calculated, *id.* at 12; and (6) the Debtor's plan did not violate the absolute priority rule because Paradigm would not be paid in full for 30 months.  *Id.* at 14.

The Debtor resolved several of those issues prior to the Bankruptcy Court's hearing on remand.  The Debtor modified its plan for reorganization to expressly state that Paradigm's pre-petition guarantees would not be extinguished and that USLR would be responsible for funding the Debtor's financial obligations.  The Bankruptcy Court held a remand hearing on February 27, 2007.  That hearing was primarily focused on the interest rate issue.  At the conclusion of the hearing, Judge Dabrowski took the matter under advisement.

On January 14, 2008, Paradigm filed a motion for a status conference.  The Bankruptcy Court granted the motion and held a status conference on March 4, 2008.  Judge Dabrowski inquired into the Debtor's sale efforts since February 2007.  The Debtor conceded that it would

not be possible to consummate a sale of the property within the 30-month marketing window

stated in its plan for reorganization, i.e., by May 2008.

On March 10, 2008, Judge Dabrowski issued an order denying confirmation of the

Debtor's plan and setting a hearing on the U.S. Trustee's motions to convert the case to Chapter

7.  U.S. Trustee Ex. 7, Memorandum of Decision on Confirmation of Debtor's Plan of

Reorganization on Remand.  After undertaking a "fresh analysis" of the Debtor's plan for

reorganization, Judge Dabrowski concluded that the plan was not feasible.  *Id.* at 4.  Of

significance to Judge Dabrowski was the Debtor's failure to undertake any effort to market or

sell the Property during the pendency of Paradigm's appeal and subsequent remand, despite

having that authority under the court's stipulated order.  *Id.*  According to Judge Dabrowski, the

Debtor had engaged in "no meaningful effort to market or sell the Real Property, and ha[d]

utterly failed to advantage itself of the generous sale opportunity provided during the last 27

months."  *Id.*  Because the Debtor had conceded that it would be unable to complete a timely sale

of the Property within the marketing window stated in its plan, Judge Dabrowski concluded that

that plan was no longer "feasible" within the meaning of 11 U.S.C § 1129(a)(11).  *Id.* at 5.  "It

was uncontested [at the March 4, 2008 status conference] that (i) there is no marketing signage

upon the Real Property; (ii) the Real Property is not listed with a Multiple Listing Service; and

(iii) the Debtor has not applied to this Court for authority to employ a real estate broker.

Accordingly, it is presently crystal clear that the Debtor, as a plan proponent, has not and can not

establish that its Plan 'offers a reasonable assurance of success,' and, thereby, satisfy the

feasibility requisite of Section 1129(a)(11)."  *Id.* (quoting *Kane v. Johns-Manville Corp.*, 843

F.2d 636, 649 (2d Cir. 1988)) (internal citation omitted).  Therefore, Judge Dabrowski declined

to confirm the Debtor's plan.

The Debtor filed a motion for leave to appeal the order denying confirmation of its plan. On May 16, 2008, I denied MCA's motion for leave to appeal, concluding that it had failed to satisfy the standard for an interlocutory appeal. *Milford Conn. Assoc., L.P. v. Mercury Capital Corp.*, 2008 WL 2079126, *3 (D. Conn. 2008). Specifically, I determined that the Bankruptcy Court properly reconsidered the feasibility of the Debtor's plan for reorganization on remand and that the Court was correct to consider the changed circumstances from the first confirmation order. *Id.* at *2-3.

In the meantime, on May 2, 2008, the U.S. Trustee filed an amended motion for converting the bankruptcy to a Chapter 7 case. U.S. Trustee Ex. 6. On May 22, 2008, Judge Dabrowski held a hearing on that motion, during which he heard testimony from Lawrence Berger, president of USLR, and appraisers for both the Debtor and Paradigm. U.S. Trustee Ex. 4, 5/22/08 Transcript (hereinafter, the "5/22/08 Tr."). Berger testified about his efforts to market and find a buyer or major retail tenant for the Property, the time and process of finding a tenant, and the financial obligations that USLR was undertaking on behalf of the Debtor. Berger testified that he had spoken with a number of national retailers who had expressed an interest in the property, but that the neighboring Lowe's store's profit figures over a period of six to twelve months would be crucial to securing a serious tenant. 5/22/08 Tr. at 106-07, 111. At that time, the Lowe's store had been open for two months. *Id.* at 107. Berger testified that the process of negotiating a lease could take up to four to five months, plus an additional two to three months to get the lease signed. *Id.* at 106, 112. According to Berger, refinancing of the Property could only occur once an anchor tenant had been secured for the site. *Id.* at 153. Berger also testified that

6

he had made no attempt to get the Property re-zoned from industrial to commercial with the City of Milford.  *Id.* at 139-40.  Berger further testified that no effort had been taken to rehabilitate the Property in the past five years.  *Id.* at 143.  On the issue of the Debtor's financial obligations, Berger admitted that USLR had only recently begun making monthly tax payments to Milford and mortgage payments to Paradigm and that nothing had been paid on those accounts for the preceding six to seven years.  *Id.* at 137-38.

The Debtor's appraiser, Norman Benedict, testified that the Property was worth $9.2 million.  *Id.* at 183.  He also estimated that it would take five or six months for the Property to be re-zoned from industrial to commercial.  *Id.* at 194.  Paradigm's appraiser, Christopher Kerin, appraised the market value of the Property at $7.8 million.  *Id.* at 236.  Kerin testified that anyone serious about marketing the Property would have: (1) put up a sign at the front of the Property, (2) listed the Property on a multiple listing service, and (3) retained a local broker, in addition to a national/regional broker, to drum up local interest.  *Id.* at 252.

## II.     Ruling of the Bankruptcy Court

On June 17, 2008, Judge Dabrowski issued the order converting the case from Chapter 11 to Chapter 7.  U.S. Trustee Ex. 3, Memorandum of Decision on Motion to Convert Case to Chapter 7.

### A.     <u>Findings of Fact</u>

Judge Dabrowski found the following facts:

1.  The Debtor filed its required Schedules and Statements over four months late.

2.  The Debtor took 19 months after filing for bankruptcy to file a proposed plan for reorganization.

7

3.  The Debtor has been late to file the required quarterly fees to the Office of the U.S. Trustee.

4.  The Debtor has been "chronically and severely late" in filing the required Monthly Operating Reports ("MORs"), noting that some reports were filed up to 17 months late.

5.  The form of the MORs was not in conformance with the Office of the U.S. Trustee guidelines.  For instance, the Debtor incorrectly aggregated multiple reporting periods into a single report; the reports were unsworn; and the reports were signed by the Debtor's attorney, not by the Debtor's principal.

6.  The present value of the Property provides a "sufficient" equity cushion to satisfy Paradigm's secured claim.

7.  The Debtor, until recently, had made no payments to Paradigm or Milford during the pendency of the bankruptcy.

8.  Berger offered "generally credible testimony" that, "in the marketplace outside of bankruptcy," his "protracted and insular" approach to marketing and developing the Property was a "prudent and commercially reasonable course of conduct."  *Id.* at 6-7.

B.    Conclusions of Law

Judge Dabrowski first noted that converting a case from Chapter 11 to Chapter 7 is governed by Bankruptcy Code Section 1112, as it existed in 2004.  Pursuant to section 1112, a bankruptcy case may be converted to Chapter 7 for "cause" where there is:

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effecuate a plan;

8

(3) unreasonable delay by the debtor that is prejudicial to creditors; . . . or

***

(10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b).  U.S. Trustee Ex. 3, Memorandum of Decision on Motion to Convert Case to Chapter 7 at 7-8.

On the issue of "cause," Judge Dabrowski determined that there was "ample 'cause' to place the administration of the Debtor's estate in the hands of an independent fiduciary charged with the liquidating [of] that estate with due expedition, i.e., a Chapter 7 trustee."  *Id.* at 8.  First, Judge Dabrowski concluded that the Debtor had "seriously neglected its reporting and other administrative responsibilities as a Chapter 11 debtor-in-possession" and that this neglect provided sufficient cause for the conversion.  *Id.*  Judge Dabrowski stated that the Debtor's delinquency in filing MORs was "shocking to the Court," particularly in light of the experienced counsel that it had retained.  *Id.* at 9.

Second, Judge Dabrowski concluded that the record supported "a determination that the Debtor's general partner, as directed by Mr. Berger, has had the intention of 'parking' the Debtor in bankruptcy until such time as it deems market conditions to be optimal to sell or otherwise develop the Real Property."  *Id.*  Noting that the Bankruptcy Code does not afford the "luxury" of a "dilatory agenda" and that its chief purpose was to secure a prompt and effectual administration and settlement of the estate, Judge Dabrowski concluded that, in exchange for the protection afforded by bankruptcy, i.e., avoiding foreclosure, a debtor-in-possession undertakes a "responsibility to pursue an open and expeditious reorganization."  *Id.* at 9-10.  Although an expeditious bankruptcy reorganization might mean a smaller distribution for equity holders than

9

they might have otherwise achieved "via a more closed and/or protracted approach," the Debtor, "as debtor-in-possession, must timely discharge the unique responsibilities of Chapter 11 in order to enjoy its limited benefits." *Id.* at 11.  Concluding that the Debtor had "utterly failed to meet the standards of disclosure and expeditious administration required by the letter and spirit of the bankruptcy laws," Judge Dabrowski held that sufficient cause existed to support a conversion to Chapter 7 under section 1112(b).  *Id.*

        C.      <u>Summary of Issues on Appeal</u>

On appeal, the appellants make a variety of claims, including: (1) the evidence is insufficient to support Judge Dabrowski's factual finding that the Debtor was not properly administering the Property; (2) Judge Dabrowski therefore erred in finding cause to convert to Chapter 7; (3) Judge Dabrowski erred in failing to reconfirm the Debtor's plan for reorganization on remand and for concluding it was "not feasible;" and (4) Judge Dabrowski erred by violating the mandate rule and by considering evidence outside the record in reaching his decision not to reconfirm the Debtor's plan and in finding it was "not feasible."  The appellees contend that Judge Dabrowski made no clear error in his findings of fact and that he did not abuse his discretion in converting the case to Chapter 7, and therefore, his ruling must be affirmed under the appropriate standard of review.

**III.**    **Discussion**

        A.      <u>Jurisdiction</u>

This court has jurisdiction to review final judgments, orders, and decrees of the bankruptcy court under 28 U.S.C. § 158(a)(1).

        B.      <u>Standard of Review</u>

At the bankruptcy appeal hearing held on May 12, 2009, counsel agreed that the bankruptcy court's decision to convert a case from Chapter 11 to Chapter 7 is reviewed for abuse of discretion.  Courts that have reviewed bankruptcy courts' decisions to convert a case from Chapter 11 to Chapter 7 pursuant to section 1112(b) have uniformly applied an abuse of discretion standard of review.  *See, e.g.*, *In re Blaise*, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998) ("[A]n order converting a bankruptcy case for cause is reviewed for an abuse of discretion."); *Derivium Capital LLC v. U.S. Trustee*, 2006 WL 1317021, at *7 (S.D.N.Y. 2006) ("This Court reviews an order converting a bankruptcy case for cause, for an abuse of discretion."); *In re Consolidated Pioneer Mortgage Entities*, 264 F.3d 803, 806-07 (9th Cir. 2001) (stating that a bankruptcy court's decision to convert a case to Chapter 7 will be reversed "only if based on an erroneous conclusion of law or when the record contains no evidence on which the bankruptcy court rationally could have based that decision") (internal alteration and quotation omitted); *In re Dahlstrom*, 1992 WL 112238, *1-2 (10th Cir. 1992) (applying abuse of discretion standard to bankruptcy court's decision denying a motion to convert the case from Chapter 11 to Chapter 7 under 11 U.S.C. § 1112(b)); *In re Domino*, 2008 WL 915205, *2 (E.D. La. 2008) (applying abuse of discretion standard to the bankruptcy court's decision to convert under section 1112(b)); *Singer Furniture Acquisition Corp. v. SSMC Inc. N.V.*, 254 B.R. 46, 51 (M.D. Fla. 2000) ("While conclusions of law are reviewed de novo, discretionary rulings made pursuant to the Bankruptcy Code are reviewable only for abuse of discretion.") (internal citation omitted); *In re Reagan*, __ B.R. __, 2009 WL 805144, *3 (B.A.P. 8th Cir. 2009) ("The bankruptcy court has broad discretion in deciding whether to dismiss or convert a chapter 11 bankruptcy case, and its decision is reviewed for an abuse of discretion."); *In re Midland Marina, Inc.*, 259 B.R. 683,

685-86 (B.A.P. 8th Cir. 2001) ("Matters committed to the bankruptcy court's discretion will be reversed only if the court abused its discretion.").

A bankruptcy court abuses its discretion when its decision: (1) is based on clearly erroneous or insufficient factual findings, (2) rests on an erroneous view of the law; or (3) falls outside the range of permissible decisions. *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169-70 (2d Cir. 2001). *See also In re Blaise*, 219 B.R. at 950 ("A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings.") (citing *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 405 (1990)). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).

C.    Judge Dabrowski's Findings of Fact

Although the appellants purport to dispute Judge Dabrowski's findings of fact, particularly with respect to his findings concerning Debtor's poor administration of the estate, they are not actually disputing the facts as found, but rather the weight that should be afforded to those facts. For instance, the appellants do not dispute that the MORs were not filed timely each month; they contend, however, that all MORs were eventually filed, that they were never inaccurate, and that no party was prejudiced by the late filings. Joint Appellate Brief of Appellants at 13. Additionally, although they do not dispute that the plan for reorganization was not filed until 19 months after commencement of the bankruptcy suit, the appellants argue "there is no evidence to suggest that nineteen months was an inappropriate time period in which to have filed a plan." *Id.* at 15. Essentially, the appellants argue that, despite the late administrative

12

filings, the Debtor should not be considered administratively deficient because no party was prejudiced and because the value of the property rose during pendency of the suit.  This, however, is not the same as arguing that the Bankruptcy Court's findings of fact were clearly erroneous.  Therefore, I conclude that Judge Dabrowski's decision was not based on clearly erroneous or insufficient factual findings.

> D.      Judge Dabrowski's Conclusions of Law

11 U.S.C. § 1112(b)[1] states, in pertinent part, that:

> on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court *may* convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, *including-*
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> (5) denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;
>
> (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

---

[1] Because this bankruptcy suit was filed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which took effect October 17, 2005, the court must use the Bankruptcy Code provisions that existed at the time this case was filed in February 2004.  *See In re Chase*, 392 B.R. 72, 75 n.2 (Bankr. S.D.N.Y. 2008) (applying Bankruptcy Code provisions at time the case was filed, which was five days before the enactment of the BAPCPA).

      (7) inability to effectuate substantial consummation of a confirmed plan;

      (8) material default by the debtor with respect to a confirmed plan;

      (9) termination of a plan by reason of the occurrence of a condition specified
in the plan; or

      (10) nonpayment of any fees or charges required under chapter 123 of title 28.

(emphasis added).  Significantly, this list of examples of "cause" is not meant to be exhaustive;
Congress intended the bankruptcy courts to consider additional factors "'as they arise, and to use
its equitable powers to reach an appropriate result in individual cases.'"  *In re C-TC 9th Avenue
P'ship*, 113 F.3d 1304, 1311 & n.5 (2d Cir. 1997) (quoting House Report No. 95-595, 95th
Cong., 1st Sess. at 405-06).

      Because Judge Dabrowski's findings of fact were not clearly erroneous, his conversion of
the case to Chapter 7 under section 1112(b) can only be reversed if the appellants can
successfully identify errors of law that would warrant reversal or demonstrate how the judge
acted outside the range of permissible choices.  The appellants argue the Bankruptcy Court
committed the following errors of law: first, that it was erroneous to convert the case to Chapter
7 on the basis of late reports and disclosures because none of the reports contained false
information, all necessary reports were eventually filed, and the late filing was not prejudicial to
any party; and second, that it was erroneous to elevate the interests of Paradigm over the interests
of the entire estate, noting that the value of the Property has continued to rise.  The appellants
further contend that Judge Dabrowski should have confirmed their plan for reorganization on
remand.  Finally, they contend it was an abuse of discretion not to appoint a Chapter 11 trustee
rather than converting the case to Chapter 7.

1.    *Did Judge Dabrowski Err by Finding Cause Based on Standards of Administration or Disclosure?*

The appellants first contend that the Bankruptcy Court erred by converting the case to Chapter 11 on the basis of the Debtor's failure to make timely administrative filings.  The appellants do not dispute that some of the Debtor's reports were not filed on time.  They take issue, however, that the administrative deficiencies represent a sufficient basis for "cause" to convert the case to Chapter 11 because none of the reports contained misleading information or omitted key information, all the necessary reports were eventually filed, and no party was prejudiced by the late filing because every party was aware that the Debtor was essentially non-operational.  As the appellants note, the Debtor has no operations, employees, or bank accounts and its only asset is a vacant piece of real property.

One problem with this argument is that Judge Dabrowski did not convert the case to Chapter 7 purely on the basis of those (undisputed) administrative deficiencies.  Although Judge Dabrowski stated that, technically, the administrative deficiencies would provide sufficient cause for the conversion, he raised those facts merely to set the stage for the broader issue: the Debtor's dilettantish attitude towards marketing and developing the Property.  The failure to make timely filings or timely payments to the U.S. Trustee, while perhaps not problematic in light of the Debtor's non-existent operations, is indicative of the Debtor's lax attitude towards bankruptcy generally.  Judge Dabrowski perceived the Debtor was "parking" the property in bankruptcy until real estate values improved, and was affording itself the benefits of bankruptcy – i.e., avoiding its real world tax and mortgage obligations – while undertaking none of its fiduciary obligations as a

15

debtor-in-possession to pursue an expeditious reorganization of the estate.

Because Judge Dabrowski did not base his decision to convert the case to Chapter 7 principally on the Debtor's many undisputed administrative deficiencies, the appellants' argument in this respect is not especially persuasive.

2.  *Did Judge Dabrowski Err in Concluding that the Debtor Had Failed to Expeditiously Administer the Estate?*

The appellants next take issue with Judge Dabrowski's conclusion that the Debtor failed in its duties and responsibilities as a bankruptcy fiduciary to expeditiously administer the estate through the bankruptcy process.  The general thrust of the appellants' argument, however, is not to note errors of law in Judge Dabrowski's order, but to offer their disagreements with Judge Dabrowski's conclusion that the Debtor's administration of the estate was somehow improper. That is not a winning argument under abuse of discretion review: this court is not at liberty to substitute its judgment even if it agrees with the appellants, but instead must review the Bankruptcy Court's ruling to ensure it conforms with the law.  Because the undisputed facts support Judge Dabrowski's conclusion that the Debtor was not pursuing its fiduciary duty to expeditiously administer the estate, there is, at a minimum, a valid basis in the law for the conversion to Chapter 7.

In his order converting the case to Chapter 7, Judge Dabrowski noted that one of the chief purposes of the bankruptcy laws "is 'to secure a prompt and effectual administration and settlement of the estate . . . within a limited period.'"  U.S. Trustee Ex. 3, Memorandum of Decision on Motion to Convert Case to Chapter 7 at 10 (quoting *Katchen v. Landy*, 382 U.S. 323, 328-29 (1965)).   Because, according to the Debtor's own testimony (via Berger), very little

16

had been accomplished within the original 30-month window and that the reorganization plan for

the estate, which had barely gotten underway, would take many more months, Judge Dabrowski

concluded that the Debtor would be unable to complete a successful reorganization of the estate

within a reasonable period of time.  *Id.* (citing *U.S. Savings Ass'n of Tex. v. Timbers of Inwood

Forest Assocs. Ltd*, 484 U.S. 365, 376 (1988)).  Therefore, because Judge Dabrowski reasonably

determined that the Debtor was securing the benefits of bankruptcy without fulfilling its duties as

a debtor-in-possession to undertake a prompt reorganization, he concluded that there was cause

to convert to Chapter 7 under section 1112(b) for failure "to meet the standards of . . .

expeditious administration required by the letter and spirit of the bankruptcy laws."  *Id.* at 11.

Cause to convert a Chapter 11 bankruptcy case to Chapter 7 exists where reorganization

seems unlikely or unrealistic based on the Debtor's track record as debtor-in-possession and

where the risk of delay falls entirely on the creditors.  For example, in *In re Halpern*, the

Bankruptcy Court dismissed the Chapter 11 case outright for cause pursuant to section 1112(b)

because the debtor had failed to find a buyer for real property despite having ample opportunity

and time to do so.  229 B.R. 67, 76 (Bankr. E.D.N.Y. 1999) ("[The debtor's] long history of

delay militates against a further moratorium under the guise of an attempt to reorganize in this

court.").  The Court noted that keeping the property in bankruptcy was essentially transferring all

the risk of the market's volatility to the debtor's judgment creditor.  *Id.*  By waiting for the

market to rebound, the debtor was hoping to increase his equity share after all creditors had been

paid.  *Id.* at 76-77.  In the meantime, however, if the market declined, the creditor bore all the

risk because the debtor had nothing more to lose.  *Id.* at 77.  *See also In re Wright Air Lines, Inc.*,

51 B.R. 96, 100 (Bankr. N.D. Ohio 1985) (holding that Chapter 7 conversion was appropriate

17

where reorganization was no longer a realistic undertaking and where the asset continued to

diminish in value); *In re Van Brunt*, 46 B.R. 29, 30 (Bankr. W.D. Wisc. 1984) (finding cause to

dismiss Chapter 11 case under section 1112(b) where debtor failed to expeditiously prosecute his

bankruptcy proceeding as evidenced by an 11-month failure to take any action to seek

confirmation of his plan for reorganization).

Such is the situation here: the Debtor's Equity Holders are the only ones that will benefit

by continuing to wait for the Property to gain value.  Allowing for further delay means that the

Property could begin to lose value (if it has not already done so), potentially eliminating the

ability to fully pay off the Debtor's creditors and tax obligations.  The Debtor has had ample

opportunity to market and develop the Property to take advantage of the recent gains in value –

opportunity that, but for the Bankruptcy Code's automatic stay provisions preventing Paradigm

from successfully foreclosing on the property, the Debtor would not have otherwise had.[2]

Because the Debtor sat on its hands during the boom market of this decade while receiving the

benefits of bankruptcy protection, it would be unfair to put any further risk of the market's

volatility on the creditors.

The appellants have failed to demonstrate how Judge Dabrowski's decision to convert the

case to Chapter 7 relied upon an error of law; they primarily contest the logic of forcing the

Property into Chapter 7 while it continues to gain in value.  Judge Dabrowski, however, had the

---

[2] At the hearing, the appellants argued that it was error to force conversion to Chapter 7
while the property continued to gain in value, relying heavily on Judge Dabrowski's factual
finding that, in the "real world" outside bankruptcy, the Debtor's course of conduct would be
"prudent and commercially reasonable."  The appellants forget, however, that in the "real world,"
the Property would have been foreclosed on in 2003 and the Equity Holders would never have
had the benefit of the Property's appreciation in value over the past five and a half years.

discretion under the Bankruptcy Code to find cause for conversion where the facts demonstrated that the Debtor had undertaken no substantive steps to develop or market the property and that it would require at least 18 months to get the land properly zoned and to find an anchor retailer for the site.  As Judge Dabrowski concluded, the Bankruptcy Code was not established to afford the Debtor unlimited amounts of time to secure the highest amount of return on the bankrupt property for its Equity Holders.

## V.    Conclusion

The appellants are missing the forest for the trees: taken alone, each factor presented by this case might not have weighed in favor of conversion to Chapter 7.  Considering the totality of the circumstances, however, including the late administrative filings, the failure to take advantage of the 30-month window to market or develop the Property, and the lengthy period that any such effort would take moving forward, it is clear that this bankruptcy was languishing in Chapter 11 and that conversion to Chapter 7 for cause was appropriate.  The facts demonstrate that there was no realistic prospect of the Debtor being able to complete a successful reorganization within a reasonable period of time.  In the meantime, the creditors continue to bear all the risk of a decline in the commercial real estate market.  Therefore, it was within Judge Dabrowski's discretion to determine that the Debtor had demonstrated a failure to expeditiously administer the estate in violation of its fiduciary duty as a debtor-in-possession and had offered no proof that its behavior was likely to change moving forward.

Because I conclude that Judge Dabrowski did not abuse his discretion in converting the case to Chapter 7, I need not address the appellants' additional and alternative arguments.

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.  The

clerk is directed to close the file.

It is so ordered.   Dated at Bridgeport, Connecticut, this 18th day of May 2009.


/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge